**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**John Anthony GREEN, Defendant–**
**Appellant.**

**No. 91–50325.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 6, 1992.

Decided April 24, 1992.

Lisa J. Damiani, San Diego, Cal., for defendant-appellant.

Kimberly D. Allan, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Before: WALLACE, Chief Judge, BROWNING and SKOPIL, Circuit Judges.

SKOPIL, Circuit Judge:

John Anthony Green appeals his conviction of knowingly making photographs of United States currency in violation of 18 U.S.C. § 474 (1988). He contends: (1) the indictment failed to allege essential elements of the crime; (2) the government wrongly interfered with defense counsel's pretrial investigation; (3) the trial court failed to suppress unlawfully seized evidence; (4) the court failed to properly instruct the jury on the elements of the crime; and (5) the trial court erroneously gave a supplemental instruction after learning the jury's numerical division. He also challenges his sentence, contending that the trial court erred by increasing his base offense level for the use of a "special skill" in committing the crime. We affirm the conviction, vacate the sentence and remand for resentencing.

## FACTS AND PROCEEDINGS BELOW

The investigation leading to Green's arrest and conviction commenced on November 29, 1989 when Secret Service agents responded to a call from an employee at Zellerbach Paper Company in Los Angeles. The employee reported that an individual ordered a special type of paper frequently used by counterfeiters, had no account with the company, seemed unfamiliar with the paper business, and wanted to pay cash that afternoon for a minimum order. Secret Service agents checked the individual's business name and phone number and concluded that no such business existed. The agents decided to survey the purchase.

Green arrived at Zellerbach in a converted school bus, purchased the paper with cash, and loaded the paper on the bus. Agents testified that they followed Green's bus and watched him stop a short distance away, turn off all lights except the interior and examine what appeared to be a $5 reserve note with a magnifying glass. When Green continued driving, he stopped frequently, drove in circles, finally entered the freeway and drove to San Diego.

The next day agents followed Green to the Midway Continuing Education Center in San Diego. Agents tracked him into the school and determined that he was enrolled there in graphic design classes. Agents interviewed one of Green's instructors who stated that Green had inquired about high quality paper for stationery. The instructor had told Green about Zellerbach's special premium paper and also had answered Green's questions about making "clean cuts" on multiple pieces of paper and whether different paper had "signatures" or identifying marks.

With the above information, agents secured a federal warrant to search Green's bus. Before the agents could execute the warrant, Green left the bus carrying a file folder. Agents stopped him and seized the folder, which contained numerous photographic negatives of $100 reserve notes. Green was arrested, advised of his rights and searched. Envelopes in his pockets contained negatives of $20 and $100 notes. The original $100 note was found in Green's wallet. The agents searched the van and found the paper purchased from Zellerbach. On the way to Secret Service offices, Green admitted that he purchased the Zellerbach paper with a fictitious name and company, and that he had produced the negatives. Green later consented to a search of his school locker which contained books and brochures on printing.

Green was charged with one count of violating 18 U.S.C. § 474. Pretrial motions to dismiss the indictment and to suppress the statements and evidence were denied. After a jury trial, the court sentenced Green under the Sentencing Guidelines to a term of six months' imprisonment.

## DISCUSSION

### I. Sufficiency of the Indictment

■ Green was charged under paragraph 6 of section 474, providing that:

Whoever prints, photographs, or in any other manner makes or executes any engraving, photograph, print, or impression in the likeness of any such obligation or other security, or any part thereof, ... [s]hall be fined ... or imprisoned....

18 U.S.C. § 474. He contends that the indictment is insufficient because it fails to allege exceptions to criminal liability created by 18 U.S.C. § 504 (1988). We disagree. "The well-established rule is that a defendant who relies upon an exception to a statute made by a proviso or distinct clause, whether in the same section of the statute or elsewhere, has the burden of establishing and showing that he comes within the exception." *United States v. Guess*, 629 F.2d 573, 576 (9th Cir.1980) (internal quotation omitted). The government has neither the obligation to allege an exception in the indictment nor the burden of going forward on the issue. *United States v. Hester*, 719 F.2d 1041, 1043 (9th Cir.1983).

### II. Interference with Defense Investigation

Two months prior to Green's trial, Secret Service agents were notified by an employee of Unisource Paper Corporation that Unisource had received an inquiry concerning the type of paper involved in this case. Agents identified the return phone number given as the law office of Lisa J. Damiani, Green's attorney. Agents directed the informant at Unisource to return the call so that the conversation could be recorded. After several attempts, the employee reached Damiani's law clerk, who inquired about the price, specifications and quality of the type of paper that Green purchased. The clerk explained that she worked for an attorney who had a client accused of counterfeiting money and that they were seeking to determine the differences between the type of paper the client had purchased and the type used to produce currency.

■ The agent who taped the conversation testified that he concluded that the law clerk was not involved in counterfeiting money but rather she was conducting an investigation on Green's behalf. Accordingly, he closed his investigation. The tape of the conversation was nevertheless turned over to the prosecutor in this case. The prosecutor subsequently notified Green's attorney of the incident and produced the Secret Service's report and a copy of the recorded call.

Green contends that pursuant to the Sixth Amendment, the government's intrusion mandates dismissal of the indictment. We have repeatedly held in similar circumstances that the Sixth Amendment is violated only when the government's action "substantially prejudices the defendant." *Clutchette v. Rushen*, 770 F.2d 1469, 1471 (9th Cir.1985), *cert. denied*, 475 U.S. 1088, 106 S.Ct. 1474, 89 L.Ed.2d 729 (1986); *see also United States v. Hernandez*, 937 F.2d 1490, 1493 (9th Cir.1991) (government's invasion of attorney-client privilege by itself does not violate Sixth Amendment; defendant must have been prejudiced); *United States v. Rogers*, 751 F.2d 1074, 1077 (9th Cir.1985) (indictment may not be dismissed for government interference with the attorney-client relationship absent prejudice to defendant). Green does not expressly argue that he was prejudiced. Although a defense strategy was revealed to the prosecutor, there is no indication that Green's ability to defend himself was impaired or that the government was able to utilize the information in any way. *See United States v. Irwin*, 612 F.2d 1182, 1189 (9th Cir.1980) (government's discovery of defense strategies affected neither the prosecution nor the defense of the case). Accordingly we reject Green's claim of a Sixth Amendment violation.

■ Green also argues that the government's actions violated his Fifth Amendment due process rights. To violate due process, governmental conduct must be "so grossly shocking and so outrageous as to violate the universal sense of justice." *United States v. Barrera–Moreno*, 951 F.2d 1089, 1092 (9th Cir.1991) (internal quo-

tations omitted). The argument is usually raised in situations where law enforcement conduct involves extreme physical or mental brutality or where the crime is "manufactured by the government from whole cloth." *United States v. Smith*, 802 F.2d 1119, 1125 (9th Cir.1986) (internal quotation omitted).

That is not the case here, and we agree with the district court that dismissal of the indictment was not required. The Secret Service responded to an *informant's* call that an individual inquired about paper frequently used by counterfeiters. Once the agent determined that the caller was not seeking to purchase paper but was gathering information for a client, the investigation ceased. Although the agent could have used better discretion in deciding to record the clerk's conversation, "less than exemplary official performance" will not justify "the extreme measure of dismissing the indictment[ ]." *Barrera–Moreno*, 951 F.2d at 1093.

### III. *Motion to Suppress*

Green contends that his arrest was unlawful and accordingly the district court erred by not suppressing statements made and evidence seized incident to the arrest. The government concedes that Green was arrested rather than merely detained. Thus, the arrest must be supported by probable cause. *See United States v. Del Vizo*, 918 F.2d 821, 825 (9th Cir.1990).

■■■ "The test for probable cause is whether the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a prudent person to believe a suspect has committed, is committing, or is about to commit a crime." *United States v. Hoyos*, 892 F.2d 1387, 1392 (9th Cir.1989), *cert. denied*, — U.S. —, 111 S.Ct. 80, 112 L.Ed.2d 52 (1990). The experience and expertise of the officers involved may be considered in determining probable cause. *Id.* Probable cause may be based on the collective knowledge of the officers involved in the investigation and all of the reasonable inferences that may be drawn from their knowledge. *Id.*

■■ In the district court, the government sought to establish probable cause for the arrest by relying on the affidavits submitted in support of the search warrant. The affidavits detailed Green's purchase of Zellerbach paper, including his use of a fictitious name and business address, and Green's payment from a "wad" of $100 reserve notes. The nature of the paper and the fact that it was frequently used by counterfeiters were explained in the affidavits. The agents detailed their surveillance of Green including his erratic driving and the stop to examine the $5 note. Green's instructor's comments were noted, including Green's alleged questions about types of paper, traceability of paper, and methods of "clean cutting" multiple pieces of paper. Finally, the arresting officer testified that he knew that other officers had obtained a search warrant and he observed Green leave the bus carrying a manila file folder.

On this information, the district court concluded that there was probable cause to arrest Green. Clearly, taken individually, none of these facts would support probable cause to arrest Green. When taken as a whole, however, we conclude that the officers had probable cause to arrest. *See United States v. Arias*, 923 F.2d 1387, 1390 (9th Cir.) (facts alone were insufficient, but taken together supported probable cause), *cert. denied*, — U.S. —, 112 S.Ct. 130, 116 L.Ed.2d 97 (1991). The totality of circumstances combined with the expertise of the officers involved in the investigation are sufficient for us to uphold the district court's refusal to suppress the evidence. *See Hoyos*, 892 F.2d at 1393.

### IV. *Jury Instructions*

The trial court initially ruled that it would instruct the jury that a violation of paragraph 6 of section 474 must be both willful and knowing. Ultimately, the court instructed that "an act is done knowingly if the defendant is aware of the act and does not act through ignorance, mistake or accident. The government is not required to prove that the defendant knew that his acts or omissions were unlawful."

Green contends that the trial court erred by refusing to instruct on willfulness. He

admits, however, that paragraph 6 does not expressly contain a willfulness element. Several courts have accordingly ruled that proof of intent is not necessary. *See, e.g., Webb v. United States,* 216 F.2d 151, 152 (6th Cir.1954); *Wagner v. Simon,* 412 F.Supp. 426, 430 (W.D.Mo.1975), *aff'd,* 534 F.2d 833 (8th Cir.1976) (adopting district court's opinion). Green nevertheless argues that subsequent passage of 18 U.S.C. § 504, which permits photography of reserve notes under certain circumstances, imposes a requirement that the government prove intent in section 474 prosecutions.

Green relies on *Regan v. Time, Inc.,* 468 U.S. 641, 104 S.Ct. 3262, 82 L.Ed.2d 487 (1984). There, the Supreme Court reviewed the interrelationship of sections 474 and 504 to determine if the restrictions on size, color, and publication contained in section 504 were reasonable time, place and manner regulations. *Id.* at 647–48, 104 S.Ct. at 3266. The Court noted that section 474 created a "complete ban on the use of photographic reproductions of currency" but that section 504 created exceptions to the ban. *Id.* at 644, 104 S.Ct. at 3264. The Court concluded that "[t]he criminal liability imposed by § 474 therefore applies only when a photographic reproduction fails to meet the requirements imposed by § 504." *Id.* at 647, 104 S.Ct. at 3266.

■ We reject Green's contention that *Regan* creates a willfulness element in section 474 prosecutions. Rather, the Supreme Court's language supports the conclusion that section 504 creates statutory exceptions to section 474 which a defendant must raise and establish. Once such an exception is established, the burden shifts to the government to prove that the exception does not apply. *See United States v. Baker,* 641 F.2d 1311, 1320 (9th Cir.1981).

Here, the trial court's instructions to the jury set forth the provisions of section 504 and indicated that "[i]f you find, based upon the evidence that the defendant knowingly photographed currency in violation of Section 474, ... but that the defendant intended to produce illustrations [conforming with section 504], you must find the defendant not guilty pursuant to Section 504." In its supplemental instructions, the court made clear that the government had the burden of proof on both the statutory elements of section 474 and the intent of the defendant to conform with section 504. We conclude there was no error in the court's instructions.

Green also complains that the court instructed the jury that the process of making a photograph "includes the making or preparation of a negative." There is no error in such an instruction. Paragraph 6 of section 474 prohibits the act of photographing currency, not merely the product. Green admits that he committed the act of photographing the reserve notes, and we reject his argument on that ground.

## V. *Supplemental Jury Instructions*

During deliberations, the jury sent a note to the court indicating it was divided, with ten jurors voting for a verdict of guilty. The note also stated the minority jurors were holding out on the issue of "intent." In response, the court admonished the jury for revealing its numerical division and sent the jurors home for the night. The next day, over defense counsel's objections, the trial court instructed the jurors to continue deliberating. The judge stated:

Good morning to you folks.

Often we find that as the day grows late that people are not able to agree, and that is why I asked you to come back this morning to see if you could arrive at a decision in this case.

Let me caution you, please don't, again, tell us what your numerical count is, just tell us that you don't think you can arrive at a verdict. After we declare a mistrial, then we would inquire about that. Please don't tell us ahead of time.

After further instructions concerning the issues in the case, the judge continued:

I urge you to coolly and calmly consider the evidence. Make up your own mind, each of you, individually, and try to arrive at that decision if you can. Don't be pushed into it by other people, but just think about it. That is basically it. It is all there in the instructions.

The court then sent the jury to continue deliberations. Two hours later the jury returned a verdict of guilty. The court

denied Green's motions for a mistrial and a new trial.

■ Green contends the trial court erred by not declaring a mistrial. We accord great deference to a trial judge's decision whether to declare a mistrial because of jury deadlock. *United States v. Cawley,* 630 F.2d 1345, 1348–49 (9th Cir.1980). Although the jury disclosed it was divided, it did not indicate that further deliberations would be fruitless, but rather asked for clarification of the judge's prior instructions. Under these circumstances, a mistrial would have been premature. *See United States v. Sommerstedt,* 752 F.2d 1494, 1498 (9th Cir.) (jury's statement that it is deadlocked is not sufficient by itself to warrant a mistrial), *amended,* 760 F.2d 999 (9th Cir.), *cert. denied,* 474 U.S. 851, 106 S.Ct. 149, 88 L.Ed.2d 123 (1985).

■ Green nevertheless argues that the supplemental instruction was improper because it had an undue coercive effect on the minority jurors. We have noted that when a jury has revealed its numerical division and the court elects to give a supplemental instruction, there is a "danger that the minority jurors would believe that the judge was directing his remarks to them rather than to the jury as a whole." *United States v. Sae–Chua,* 725 F.2d 530, 532 (9th Cir.1984). For that reason, such a supplemental instruction is not favored when there is a "potentially coercive effect upon those members of a jury holding to a minority position at the time of the instruction." *United States v. Beattie,* 613 F.2d 762, 764 (9th Cir.), *cert. denied,* 446 U.S. 982, 100 S.Ct. 2962, 64 L.Ed.2d 838 (1980).

In this case, it would be hard to imagine a less coercive supplemental instruction. Jurors were not told they had a duty to reach a verdict. Rather, they were informed a mistrial was a possibility if they could not agree. Jurors were also not specifically told to reconsider their positions in light of the views of other jurors, as a typical *"Allen* charge" communicates. *See Allen v. United States,* 164 U.S. 492, 501– 02, 17 S.Ct. 154, 157, 41 L.Ed. 528 (1896) (upholding instruction). Rather, jurors here were cautioned to "[m]ake up your own mind, each of you, individually" and "[d]on't be pushed into it by other people."

Because of these cautionary statements, the instruction was even less coercive than simply asking the jury to continue deliberating, and we conclude that it was not error to give the supplemental instruction.

## VI. *Sentencing Guidelines*

■ Green contends that the district court erroneously applied United States Sentencing Commission, *Guidelines Manual* § 3B1.3 (Oct. 1987), which mandates that two points be added to the base offense level whenever a defendant "used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." The enhancement here increased the permissible sentencing range from 1–7 months to 4–10 months. *See* U.S.S.G. Sentencing Table.

It has been generally recognized that the "special skill" enhancement provision of section 3B1.3 "applies only if the defendant employed a 'special skill' in the form of a pre-existing, legitimate skill not possessed by the general public to facilitate the commission or concealment of a crime." *United States v. Young,* 932 F.2d 1510, 1513 (D.C.Cir.1991). This interpretation is consistent with guideline commentary which explains that a special skill is one "not possessed by members of the general public and usually requiring substantial education, training or licensing. Examples would include pilots, lawyers, doctors, accountants, chemists, and demolition experts." U.S.S.G. § 3B1.3, comment. (n.2). Courts have generally rejected application of the guideline merely because the offense was difficult to commit or required a special skill to complete. *See, e.g., Young,* 932 F.2d at 1513.

The record in this case indicates that the government sought the special skills enhancement based on its contention that Green possessed pre-existing skills in printing. We agree with the Fifth Circuit that a pre-existing skill in printing does not facilitate the crime of photographing federal reserve notes. *United States v. Foster,* 876 F.2d 377, 378 (5th Cir.1989). On appeal the government contends that special photography skills are required to make prints and that the negatives seized from Green displayed that special skill. Even if this

contention had been properly raised below, we would reject it. Green was not a professional photographer, nor does the record indicate that he possessed any greater photography skills than most individuals. The fact that the negatives seized from him were allegedly skillfully produced does not support imposition of the special skill enhancement. *See Young*, 932 F.2d at 1513. We vacate Green's sentence and remand to the district court for resentencing within the guideline sentencing range of 1–7 months.

## CONCLUSION

We reject Green's challenges to his conviction and affirm. We vacate Green's sentence and remand for resentencing consistent with our opinion.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.