**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Cesar Yap CHANGCO, Defendant–Appellant.**

**No. 91–50755.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 5, 1993.

Decided July 27, 1993.

Michael J. Brennan, Manhattan Beach, CA, for defendant-appellant.

Debra W. Yang, Nicola T. Hanna, Asst. U.S. Attys., Los Angeles, CA, for plaintiff-appellee.

Before: KOZINSKI, SUHRHEINRICH * and T.G. NELSON, Circuit Judges.

KOZINSKI, Circuit Judge:

We consider how a defendant goes about establishing that a prosecutor's race-neutral justifications for a peremptory strike are pretextual.

## Background

Changco was convicted by a jury of robbing a Post Office, carrying a firearm during a crime of violence and kidnapping. *See* 18 U.S.C. §§ 924(c)(1), 1201(a)(5), 2114. Although neither the government nor the defendant challenged any member of the venire for cause, each side exercised peremptory challenges. At issue are two of the prosecution's peremptory strikes—Maldia and Delacruz. Upon initial questioning by the court, Maldia stated that she performed data entry at a financing company, was married with children, had a high school education and regularly read *Reader's Digest*. Delacruz was a full-time student at Cal–State University, Los Angeles, majoring in Spanish; she was a *Vogue* reader. The government exercised its first peremptory challenge to strike Delacruz, and its third to strike Maldia. At that point, defense counsel objected on the ground that the prosecution had struck "two minority women." RT 9/3/91 at 73. After hearing the prosecutor's explanations, the court upheld the strikes.

Changco appeals this ruling. He also appeals the denial of his motion for a mistrial, which was based on events that took place during the jury's deliberations.

---

* The Honorable Richard F. Suhrheinrich, United States Circuit Judge, United States Court of Ap-

## Discussion

### A. The Peremptory Strikes

**1.** It is now well settled that the discriminatory exercise of peremptory challenges by either prosecution or defense violates the Equal Protection Clause. *Batson v. Kentucky*, 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986); *Georgia v. McCollum*, —— U.S. ——, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992). A party raising a *Batson* claim must first make a prima facie showing that peremptory challenges may have been exercised on the basis of an impermissible ground, such as race; if the district court accepts this showing, the burden shifts to the striking party to articulate a race-neutral justification. The district court then makes the ultimate determination whether purposeful discrimination has indeed been shown. *Hernandez v. New York*, —— U.S. ——, ——, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991).

During voir dire, defense counsel objected to the striking of Delacruz on the ground that she was "the second minority female [against] which the government has ... used [its] peremptory challenge." RT 9/3/91 at 73. At oral argument before us, defense counsel conceded that the basis of Changco's challenge was the women's ethnicity, rather than their gender or a hybrid of both. We therefore need not decide whether "minority women" make up an identifiable *Batson* class. *See United States v. Chinchilla*, 874 F.2d 695, 698 (9th Cir.1989) (Hispanics are cognizable group for *Batson* purposes); *but see note 1 infra*.

Whether Changco made the requisite prima facie showing that the prosecutor exercised her peremptory challenges on the basis of race isn't at issue. The district court apparently thought a prima facie case had been made, and asked the prosecutor to articulate race-neutral explanations for striking Maldia and Delacruz. "Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of

peals for the Sixth Circuit, sitting by designation.

whether the defendant had made a prima facie showing becomes moot." *Hernandez,* —— U.S. at ——, 111 S.Ct. at 1866. We thus focus on the adequacy of the prosecutor's explanations.

The prosecutor explained she had struck Maldia "based primarily on her language abilities.... [I]f she were in the jury room [it might] affect the deliberation in some manner because of that language difficulty." RT 9/3/91 at 73–74. The prosecutor added that Maldia had been inattentive during the reading of the indictment and voir dire, and that her body language suggested timidity which would make her ineffective during deliberations. *Id.* As for Delacruz, the prosecutor offered her youth and inattentiveness as the reasons for striking her. *Id.* at 75–76. The court ruled that it could not "make the determination that there has been a deliberate attempt by the government to exclude minorities"; but it admonished the prosecutor that any further strikes of minority jurors would be carefully scrutinized. *Id.* at 76. Defense counsel did not comment on the prosecutor's explanation or indicate disagreement with the district court's ruling; he did not ask for any findings.

■ 2. Changco does not contest that the prosecutor may strike potential jurors for their passivity, inattentiveness or inability to relate to other jurors, nor could he: We have repeatedly upheld these reasons as valid, race-neutral explanations for excluding jurors. *See, e.g., United States v. Daly,* 974 F.2d 1215, 1219 (9th Cir.1992) (per curiam) (loner personality); *United States v. Power,* 881 F.2d 733, 740 (9th Cir.1989) (fidgeting and inattentiveness). But Changco argues that striking jurors because they aren't proficient in English is tantamount to striking them because of their race or ethnicity.

■ English proficiency is a statutory requirement for serving on a federal jury. 28 U.S.C. §§ 1865(b)(2)–(3). If the prosecutor had doubts about the ability of Maldia or Delacruz to follow the events of the trial, comprehend the judge's instructions or deliberate effectively with the other jurors, she

had ample grounds for striking them. So long as the prosecutor (or the defendant, for that matter) can convince the district court that the potential juror who is being struck *in fact* has difficulty with English, the justification is race-neutral. *Hernandez,* —— U.S. at ——, 111 S.Ct. at 1873; *see also United States v. Bishop,* 959 F.2d 820, 826 (9th Cir.1992) (place of residence, while often correlated with race, is a valid justification so long as it "utilized as a link connecting a specific juror to the facts of the case"). It would be much different, of course, if the prosecutor were to strike a potential juror based on her last name alone, and then justified the strike by arguing that people with a particular last name often have trouble understanding English. The latter would be the type of sweeping generalization about the language abilities of racial groups that would make the explanation race non-neutral.

■ It may well be that many of those struck because of language difficulties will be minorities. But that fact does not make it illegitimate to exercise a peremptory challenge on that basis. *Batson* derives from the Equal Protection Clause; a successful claim therefore depends upon a showing of intentional discrimination. *See Hernandez,* —— U.S. at ——, 111 S.Ct. at 1866, 1868. Whether a particular reason for striking jurors has a disproportionate effect on minorities is relevant to figuring out whether intentional discrimination has occurred; but disparate impact does not, by itself, a *Batson* violation make. As the Third Circuit recently held, "the role of disparate impact in the *Batson* analysis is as circumstantial evidence of discriminatory intent ... and not as a controlling legal factor." *United States v. Uwaezhoke,* 995 F.2d 388, 392–93 (3rd Cir. 1993).

■ 3. Changco also argues that, even if the prosecutor's justifications were facially race-neutral, they were pretextual: The prosecutor really struck these jurors because they are Hispanic, not because of any inattentiveness or language difficulties.[1]

---

1. While we have held previously that Hispanics are a cognizable class for purposes of *Batson, see Chinchilla,* 874 F.2d at 698, the only evidence in the record as to whether Maldia and Delacruz were Hispanic is that they had Hispanic-sounding names. *See* RT 9/3/91 at 75; RT 9/4/91 at

Changco thus claims Maldia had no language difficulty at all and that she answered the court's questions with aplomb. *See* Opening Brief at 28. He argues the prosecutor's failure to object earlier to Maldia's facility with English proves that the reason advanced by the prosecutor was a ruse. *Id.* at 29. Changco also contends that Maldia's language capabilities should have been examined once they had been called into question by the prosecutor. *Id.* at 31. He makes similar attacks on the reasons offered for striking Delacruz, including the government's failure to prove she was in fact young. *Id.* at 32.

These are all significant arguments but we're unable to consider them because Changco never raised them below nor developed a factual record to support them. This case presents the mirror image of *United States v. Thompson,* 827 F.2d 1254 (9th Cir. 1987), where the district court conducted an in camera, ex parte examination of the prosecutor's motives for striking all of the black jurors. We held that defense counsel should have been present to hear and, if necessary, object to the prosecutor's explanations. Defense counsel could assist the district court by pointing out inconsistencies in the prosecutor's overall striking pattern, especially when the prosecutor's actions or explanations undermine the reason given in response to the defendant's objections. Counsel could also build a record by pointing out physical characteristics of various members of the venire when this would impeach the prosecutor's explanations. As we noted in *Thompson,* unless such facts are verbally articulated, they are lost to the record and appellate review becomes impossible. *Id.* at 1260–61.

■ In conformity with our holding in *Thompson,* defense counsel here was present when the prosecutor advanced her reasons for the strikes. But defense counsel raised none of the arguments Changco now brings on appeal.[2] After the prosecutor gave her explanations, defense counsel stood mute and the district court upheld the strikes. Under these circumstances, it becomes impossible for us to give Changco's arguments meaningful consideration.

The transcript does not reveal, for example, whether Maldia or Delacruz actually had difficulty with English. Changco asserts in his brief that Maldia "not only understood the court's [voir dire] questions without any difficulty, she responded to those questions in such a way that everyone in the courtroom evidently understood her answers." Opening Brief at 28. But the portion of the transcript to which Changco cites—containing Maldia's answers to the court's questions—is of little assistance. We cannot tell whether Maldia stumbled or paused as she responded to the questions; nor can we tell whether there is any substance to the prosecutor's assertions that Maldia was "not paying attention," "fumbling through her purse and fishing to get something out" or "sit[ting] in her chair in a timid manner." RT 9/3/91 at 74.

A timely objection by Changco would have also given the prosecutor an opportunity to elaborate on her reasons for striking Maldia and Delacruz. Changco now seeks to cast doubt on the prosecutor's concerns about Maldia's and Delacruz's ability to understand the proceedings by pointing out the prosecutor opposed striking for cause another juror with a hearing impediment. Opening Brief at 31. This argument would certainly have merited a response by the prosecutor. But the prosecutor's explanation will never be known because Changco failed to articulate the argument at a time and place where the prosecutor could offer a response. Timely objections by Changco would also have shed further light on the prosecutor's assertion

11–13. While racial identity can often be determined simply by looking at the prospective juror, ethnicity is much harder to ascertain without knowing more about the juror's family background. Even if one could identify with precision which surnames connote Hispanic ethnicity, the question remains whether the name was obtained through marriage or adoption rather than birth. Moreover, some Hispanic-sounding names—such as Cardozo and Perez—are common among Sephardic Jews. Ordinarily, therefore, surnames alone would not suffice for a *Batson* challenge. *See United States v. Esparsen,* 930 F.2d 1461, 1466 (10th Cir.1991). Nevertheless, since the district court and counsel proceeded on the assumption that Maldia and Delacruz were Hispanic, we will do the same.

2. Changco has a different lawyer on appeal.

that Delacruz was too young, as her exact age could have been determined; and they would have permitted the court or counsel to examine the jurors to determine whether they really did have difficulty with English.[3]

Finally, had the claim of pretext been raised below, we would now have the benefit of findings on all these matters from the district judge. Findings of fact would not only give us confidence that the district court focused on the right issue in making its ruling; it would also affect our standard of review. *Compare Bishop*, 959 F.2d at 821 n. 1 (whether justification is race-neutral reviewed de novo) *with Chinchilla*, 874 F.2d at 697–98 (determination of whether discrimination occurred in striking accorded great deference). It's also entirely possible that the district court—who was obviously sensitive to the possibility of impermissible striking— might have given Changco the relief he sought, obviating the need for an appeal and the possibility of repeating the entire trial. As matters stand now, however, we have no basis for setting aside the district judge's ruling.

## B. The Jury's Deliberations

■ Changco also argues the district court erred in denying his motions for a mistrial based on two incidents of alleged misconduct. On September 6, the foreman sent a note to the judge which said: "Can't convince one person. Don't know what to do. Set mind before case. She can't hear well and is not looking at evidence." RT 9/6/91 at 25. Defense counsel then moved for a mistrial on the ground that the jury had revealed its numerical division to the judge. *Id.* at 26. The court denied the motion, called the jury back and advised them to keep deliberating. *Id.* at 27, 30.

This case is just like *United States v. Green*, 962 F.2d 938 (9th Cir.1992). There, the jury passed the judge a note indicating that it was at an impasse; it also disclosed its numerical division. After noting the "great deference" we accord the decision whether to declare a mistrial because the jury is deadlocked, we affirmed: "Although the jury disclosed it was divided, it did not indicate that further deliberations would be fruitless, but rather asked for clarification of the judge's prior instructions. Under these circumstances, a mistrial would have been premature." *Id.* at 944 (citation omitted). The supplemental instruction the district court gave here was no more coercive than the one in *Green:* Each asked the jury not to disclose again its numerical division, urged the jury to continue deliberating and to try to reach a verdict and admonished individual jurors not to surrender their conscientiously-held beliefs. *Compare id.* at 943–44 *with* RT 9/6/91 at 30; *see also United States v. Ajiboye*, 961 F.2d 892, 894 (9th Cir.1992) (revelation of numerical division not reversible error absent other indications of impermissible coercion).

The second incident arose on September 9, when an individual juror (the same juror, it turns out, who was the subject of the first note) passed a note to the judge, claiming she was being intimidated, harassed and physically threatened by other jurors. RT 9/9/91 pp. 4–5.[4] The court summoned the juror into chambers, on the record and in the presence of counsel. After inquiring into the specifics of the juror's grievances, the court assembled and addressed the jury. The court instructed the jurors to treat one another civilly and with respect, and asked if they could continue deliberating, to which the

---

3. Changco faults the government for failing to request a court investigation or finding on these points. *See* Opening Brief at 31, 32. But it was Changco's responsibility, not the government's, to request such findings. In the absence of some indication by Changco that he believed the asserted reasons were pretextual, the district court and prosecutor were entitled to proceed on the assumption that Changco was acquiescing in the prosecutor's explanations.

4. The note read:
   Dear Judge Reyas [sic],

In accordance with the instruction to jurors to report improper behavior, I wish to speak with you before going into deliberation again.

On Friday, September 6, I was subjected to shouts, insults and physical intimidation and harassment and slanderous remarks. This put me into a state of near shock. I cannot deliberate or reach any rational decisions under such circumstances.

I will be glad to discuss this with you.
Sincerely, J__ S_____, Juror Number 6.

foreman replied they could. *Id.* at 19–22. The jury retired. One hour later, it reached its verdicts.

Changco alleges two errors. First, he claims the in-chambers meeting with the juror was an "ex parte communication." Opening Brief at 39. That's not quite right. An ex parte hearing or communication only occurs when one party is not represented. Here Changco's counsel was present in chambers during the interview of the juror. Thus, while Changco himself was absent, he was represented by his lawyer, and the interview was therefore not ex parte. The strongest claim Changco can make is that the interview was arguably a critical "stage of the trial," one which required his personal presence. *See* Fed.R.Crim.P. 43. Because Changco failed to raise this objection below, however, he waived his right to be present during the interview. *United States v. Gagnon*, 470 U.S. 522, 528–29, 105 S.Ct. 1482, 1485–86, 84 L.Ed.2d 486 (1985) (per curiam).

Changco also argues the court's statement to the jury was coercive. Isolating particular phrases from the court's lengthy comments, Changco claims the embattled juror may have believed the court was singling her out, trying to nudge her into acceding to the rest of the jury's views. But the court merely instructed the jurors to behave like adults; it punctuated its comments with yet another admonition that no juror surrender a strongly-held belief. RT 9/9/91 at 22. Viewing the court's comments *as a whole,* as we must, *see, e.g., Lowenfield v. Phelps*, 484 U.S. 231, 237, 108 S.Ct. 546, 550, 98 L.Ed.2d 568 (1988), we conclude they were not coercive. The motions for mistrial were properly denied.

*AFFIRMED.*