**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jerry Don MAINARD, Defendant–
Appellant.**

No. 92–10298.

United States Court of Appeals,
Ninth Circuit.

Submitted Aug. 31, 1993.*

Decided Sept. 20, 1993.

Barry F. Nix, Fresno, CA, for defendant-appellant.

Kevin Rooney, Asst. U.S. Atty., Fresno, CA, for plaintiff-appellee.

Before: REAVLEY,** PREGERSON, and FERNANDEZ, Circuit Judges.

FERNANDEZ, Circuit Judge:

Jerry Don Mainard appeals his sentence under the Sentencing Guidelines for conspiracy and aiding and abetting the attempt to manufacture methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) & 846 and 18 U.S.C. § 2. The only issue we address is whether the district court erred by enhancing Mainard's offense level for the use of special skills in imposing a sentence of 188 months.[1] We vacate his sentence and remand for resentencing.

## STATEMENT OF FACTS

On December 5, 1991, Mainard was convicted of conspiring to manufacture and attempting to manufacture methamphetamine.

---

* The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir.R. 34–4 and Fed.R.App.P. 34(a).

** The Honorable Thomas M. Reavley, Senior Circuit Judge for the United States Court of Appeals for the Fifth Circuit, sitting by designation.

1. Mainard also argued that the district court erred by denying him an acceptance of responsibility reduction and challenged his conviction on several grounds. We have addressed those claims in an unpublished memorandum.

The jury found that Mainard directed others to obtain the chemicals needed for cooking methamphetamine and instructed them to utilize the laboratory in a house in Copperopolis, California.

The probation officer first determined Mainard's base offense level.[2] The presentence report ("PSR") recommended a four-level enhancement under section 3B1.1 for being an organizer or leader of a criminal activity that involved five or more people.

The government argued that if the four-level enhancement was improper, Mainard's offense level should be enhanced under section 3B1.3. That provision states that the defendant's offense level may be enhanced by two levels "[i]f the defendant ... used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. Mainard objected to the PSR's recommendation of the four-level enhancement on grounds that the conspiracy did not involve five people. The probation officer filed responses to both parties' objections and refused to change the recommendation.

At sentencing, the district court declined to enhance Mainard's base offense level by four levels for being an organizer. It also decided to give Mainard a two-level enhancement for use of a special skill. We address Mainard's appeal of the special skill determination.

## STANDARD OF REVIEW

■■■■ We review the district court's factual determinations supporting a sentence for clear error and its legal interpretations of the Guidelines de novo. *United States v. Foreman*, 926 F.2d 792, 795 (9th Cir.1990).

## DISCUSSION

Under Guidelines section 3B1.3, the district court may enhance the defendant's offense level if he "used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." " 'Special skill' refers to a skill not possessed by members of the general public and usually requiring substantial education, training or licensing. Examples would include pilots, lawyers, doctors, accountants, chemists, and demolition experts." U.S.S.G. § 3B1.3, comment. (n. 2). "It has been generally recognized that the 'special skill' enhancement ... 'applies only if the defendant employed a "special skill" in the form of a pre-existing, legitimate skill not possessed by the general public....' " *United States v. Green*, 962 F.2d 938, 944 (9th Cir.1992) (defendant did not possess special photography skills to warrant enhancement) (quoting *United States v. Young*, 932 F.2d 1510, 1513 (D.C.Cir.1991)). The Guideline's use of the word "facilitated" implies that an enhancement for use of a special skill under section 3B1.3 should apply if the special skill made it significantly easier for the defendant to commit or conceal the crime. *See Foreman*, 926 F.2d at 795–96. The enhancement should "not be employed if an abuse of ... skill is included in the base offense level or specific offense characteristic." U.S.S.G. § 3B1.3.

Here, the government sought the special skills enhancement based on Mainard's "sophistication in methamphetamine manufacturing" and "ability to pass his expertise along to others." The district court adopted that position and stated,

> There is no doubt that Mr. Mainard, by his own testimony, had experience in the cooking of methamphetamine.... I find that there was a special skill and I'm going to enhance the base level by two for the special skill.

Mainard argues that the enhancement was improper in his case because he is not a trained chemist and that his "special skills" are included in the offense level for manufacturing methamphetamine.

We recently confronted a similar issue involving an enhancement for the use of skills to photograph money. We vacated the defendant's sentence on the ground that the defendant's skill as a photographer was not "special" enough to justify the enhancement. *Green*, 962 F.2d at 945. We stated, "[P]re-existing skill in printing does not facilitate the crime of photographing federal reserve notes.... Green was not a professional pho-

---

**2.** All calculations were made under and all references are to the November 1991 Guidelines.

tographer, nor does the record indicate that he possessed any greater photography skills than most individuals. The fact that the negatives seized from him were allegedly skillfully produced does not support imposition of the special skill enhancement." *Id.* at 944–45. (citation omitted). In *Green,* we looked to the decision in *Young* for guidance. Here, we do the same.

In *Young,* the defendant was convicted of manufacturing PCP and other offenses. The district court imposed a special skills enhancement based on Young's ability to manufacture PCP. 932 F.2d at 1511–12. The District of Columbia Court of Appeals reviewed that enhancement and noted that "if [Young] has earned the special skill enhancement [by being able to manufacture PCP], anyone who manufactures PCP also merits it because the manufacture of PCP, by definition, requires special skill." *Id.* at 1512. The Court rejected that notion "because ... [it is] based on an impermissibly broad interpretation of § 3B1.3 that leads to results not contemplated by the Sentencing Commission." *Id.* at 1513. It saw the key to the section as being the misuse of a "pre-existing, legitimate skill." *Id.*

■ We agree with the District of Columbia Circuit that the purpose of the Commission is to add to the punishment of those who turn legitimate special skills to the perpetration of evil deeds. We think that it is no accident that the special skill enhancement is coupled with the abuse of trust enhancement in section 3B1.3. In a sense, abuse of a special skill is a special kind of abuse of trust. It is a breach of the trust that society reposes in a person when it enables him to acquire and have a skill that other members of society do not possess. That special societal investment and encouragement allows a person to acquire skills that are then held in a kind of trust for all of us. When the person turns those skills to evil deeds, a special wrong is perpetrated upon society, just as other abuses of trust perpetrate a special wrong upon their victims. That does not describe Mainard's case.

■ Standing alone, Mainard's ability to manufacture methamphetamine cannot be the basis of a special skill enhancement. Al-

though Mainard might have been considered a master of his criminal craft, he did not "employ[ ] a 'special skill' in the form of a pre-existing, legitimate skill not possessed by the general public to facilitate the commission or concealment of a crime." *Young,* 932 F.2d at 1513. Again, we agree with the *Young* court's reasoning that section 3B1.3 "was intended to punish those who abuse their special skills by using them to facilitate criminal activity rather than legal, socially beneficial activity." *Id.* at 1514. Surely, being skilled at the clandestine manufacturing of methamphetamine is not a "legitimate" skill and there is no legal or socially beneficial avenue to channel that ability into.

There is no evidence that Mainard was a trained chemist or pharmacist or that he could be employed as a chemist or pharmacist. *See Young,* 932 F.2d at 1513; *see also United States v. Fairchild,* 940 F.2d 261, 266 (7th Cir.1991) (enhancement proper where defendant was biologist and formerly worked as chief lab tech in hospital). Although the methamphetamine laboratory might have been sophisticated, nothing indicates that Mainard used any "pre-existing, *legitimate* skill not possessed by the general public" to facilitate the building of the lab. *See Green,* 962 F.2d at 944 (emphasis added); *see also United States v. Hummer,* 916 F.2d 186, 191 (4th Cir.1990) (ability to tamper with consumer products was a legitimate skill, but when used to facilitate extortion enhancement appropriate), *cert. denied,* —— U.S. ——, 111 S.Ct. 1608, 113 L.Ed.2d 670 (1991).

The government argues that *Young* is inapplicable because the government is not seeking the enhancement for all methamphetamine manufacturers, only those who are sophisticated and who can train others. That assertion is flawed because it does not identify any "special skill" that *facilitated* the commission or concealment of the crime. The government relies on *United States v. Fuente–Kolbenschlag,* 878 F.2d 1377 (11th Cir.1989). That case is inapposite because the Eleventh Circuit was not asked to construe the "special skill" provision. The issue on appeal was double counting and the defendant did not appeal the determination that he had a special skill. *Id.* Furthermore,

Fuente–Kolbenschlag possessed skill as a printer and abused that skill to make counterfeit currency, but Mainard was not a chemist who abused his skills to produce drugs. Like Young, Mainard merely "bone[d] up on the tricks of his trade and be[came] adept at committing a crime that the general public [did] not know how to commit." 932 F.2d at 1514. Like Young, Mainard should not have been subjected to the special skill enhancement.

## CONCLUSION

The issue before us is not whether the special skill enhancement *can* apply to a drug manufacturer; it is whether, under the circumstances, it *should* apply. Based on the circumstances of this case, it should not. *See Green,* 962 F.2d at 945; *Young,* 932 F.2d at 1515. Although Mainard might have developed a talent for cooking methamphetamine, the mere exercise of that criminal skill could not call down the application of section 3B1.3. Thus, we vacate the sentence and remand for resentencing.

**VACATED and REMANDED.**