(Plaintiff's Exh. 139 at 9–11, 34, 57–58, 60–61 (emphasis added).)

14. The *Kazanjian* court concluded "that an innocent general partner is not jointly and severally liable with a malfeasant general partner for misappropriation which causes loss to a limited

therefore reverse that decision as to Barnett's liability.

## VI. CONCLUSION

We AFFIRM the amended order of the district court insofar as it affirms the bankruptcy court's judgment against Randall Atkins. We REVERSE the amended order of the district court insofar as it affirms the judgment against Charles Barnett.

AFFIRMED in part, REVERSED in part.

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Michael MALGOZA and Tomas Monte, Defendants–Appellants.**

No. 90–5940.

United States Court of Appeals, Eleventh Circuit.

Sept. 23, 1993.

Guy W. Turner, Coral Gables, FL, for Monte.

Patricia Jean Kyle, Miami, FL, for Malgoza.

Dexter W. Lehtinen, U.S. Atty., Mary V. King, Edward Ryan, Linda C. Hertz and Carol Herman, Asst. U.S. Attys., Miami, FL, for plaintiff-appellee.

Before COX, Circuit Judge, JOHNSON, Senior Circuit Judge, and KEHOE *, Senior District Judge.

PER CURIAM:

Michael Norman Malgoza and Tomas Monte were convicted of distributing cocaine, in violation of 21 U.S.C. § 959(a)(1), and conspiring to import cocaine, in violation of 21 U.S.C. § 952(a). On appeal, Monte challenges his conviction and sentence. Malgoza challenges only his conviction. Finding no reversible error, we affirm both appellants' convictions and sentences.

## I. FACTS

This case arises from a joint investigation conducted by Haitian and United States authorities. The appellants were involved with others in a scheme to import cocaine from Colombia to the United States by way of Haiti. While in Haiti, undercover agents met Monte and Malgoza.

One of the coconspirators explained to undercover agents that they planned to contact the source of the cocaine in Colombia by radio. Monte was introduced to the agents as the radio operator. In response to an agent's question concerning his qualifications,

---

* Honorable James W. Kehoe, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

Monte explained that he had taught himself to operate radios. The presentence investigation report notes that Monte said he had used a radio to call Colombia so many times that he had become an expert. With the help of an undercover agent and one of the coconspirators, Monte assembled the radio in Haiti. He produced a piece of paper which contained a list of radio frequencies, which he used to contact the source of the cocaine in Colombia. On several occasions, Monte operated the radio to call individuals in Colombia to arrange for the plane shipment of cocaine to Haiti.

Coconspirators described Malgoza as a very well trusted individual who would join the group to receive the cocaine at a small airstrip, where the group planned to load the cocaine into a truck for the next leg of the trip. On the day of the cocaine delivery, Malgoza accompanied the other coconspirators, who introduced him to the agents. On one of the occasions when Monte called Colombia, Malgoza spoke with the person who was to provide the cocaine. Malgoza also assisted in clearing and preparing the airstrip for the plane to land.

After the plane landed and two individuals on board unloaded some burlap-covered bales of cocaine, Haitian soldiers arrived and arrested the appellants and the other coconspirators. Authorities seized the cocaine and brought it to the United States for testing. The tests revealed that the shipment contained approximately 800 kilograms of cocaine.

The appellants were charged in a two count indictment and were tried by a jury. The jury found both appellants guilty on both counts. The district court sentenced Monte to a prison term of 360 months. Malgoza received a life term of imprisonment.

## II. ISSUES ON APPEAL

Malgoza challenges the district court's admission into evidence of a prior conviction under Federal Rule of Evidence 404(b). Finding that challenge without merit, we affirm his convictions pursuant to Eleventh Circuit Rule 36–1.

Monte challenges on due process grounds the district court's refusal to dismiss the charges against him as a result of the Government's failure to make a good faith effort to preserve or produce certain items seized from him, which he claims were material to his defense. We reject that challenge and affirm his conviction pursuant to Eleventh Circuit Rule 36–1.

Monte's challenge to his sentence warrants discussion. Monte alleges that the district court erred in enhancing his sentence for use of a special skill "in a manner that significantly facilitated the commission or concealment of the offense." *See* United States Sentencing Commission, *Guidelines Manual,* § 3B1.3 (Nov. 1989) [hereinafter U.S.S.G.].[1]

Monte offers two grounds in support of his challenge to the district court's enhancement of his sentence for use of a special skill to facilitate the commission or concealment of the crime. His first argument is that radio operating abilities do not constitute "special skills" under U.S.S.G. § 3B1.3. Monte's second tack is that even if radio operation could be a special skill, his particular role in this offense did not involve a special skill.

## III. STANDARD OF REVIEW

Monte asserts that the district court erred in enhancing his sentence by applying U.S.S.G. § 3B1.3 to his role in the crime. We give due deference to the court's application of the sentencing guideline to the facts. *See* 18 U.S.C. § 3742(e); *United States v. Long,* 935 F.2d 1207, 1211 (11th Cir.1991).

To say that we review a finding with due deference means that we give the district court the deference that is due in regard to that finding. The deference due will depend upon whether the determination is primarily factual or legal. *See United States v. Daughtrey,* 874 F.2d 213, 217 (4th Cir.1989) (explaining the meaning of due deference). When the district court's application of sentencing guidelines to facts involves

---

1. The November 1989 Sentencing Guidelines were applicable on October 26, 1990, the date Monte and Malgoza were sentenced.

primarily a legal decision, such as the interpretation of a statutory term, less deference is due to the district court than when the determination is primarily factual. *Id.; cf. United States v. Kirkland,* 985 F.2d 535, 537 (11th Cir.1993) (reviewing *de novo* the district court's application of U.S.S.G. § 3C1.1 to finding that defendant obstructed an official investigation where application of the enhancement turned on whether investigation was "official"); *United States v. Shriver,* 967 F.2d 572, 574 (11th Cir.1992) (reviewing *de novo* the district court's application of U.S.S.G. § 2F1.1, the enhancement for "intended loss," to gain actually received by defendant's wife where defendant intended to cause a loss to I.R.S. by transferring property to wife). In contrast, when an application of the guidelines to facts is closer to a pure question of fact, the appellate court will review the application with the deference due under the clearly erroneous standard. *Daughtrey,* 874 F.2d at 217; *cf. Long,* 935 F.2d at 1211 (applying due deference, but rejecting the clearly erroneous standard for review of the court's refusal to apply U.S.S.G. § 3A1.1, the enhancement for a vulnerable victim).

■ In this case, we review the legal meaning of the term "special skills" *de novo. See United States v. Hubbard,* 929 F.2d 307, 310 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 206, 116 L.Ed.2d 165, *and cert. denied,* —— U.S. ——, 112 S.Ct. 309, 116 L.Ed.2d 252 (1991); *United States v. Young,* 932 F.2d 1510, 1512 (D.C.Cir.1991) (citing *Hubbard* ); *United States v. Connell,* 960 F.2d 191, 197 (1st Cir.1992) (also citing *Hubbard* ). We review for clear error the district court's findings regarding the level of Monte's radio operating skills and the manner in which Monte used those skills during the commission of the offense.

## IV. DISCUSSION

■ We hold that the term "special skills" applies to an advanced level of radio operating ability. We further find that the district court's factual conclusions—that Monte had such an ability and used it in a manner that significantly facilitated the commission or

concealment of the offense—are not clearly erroneous.

### A. Ability to Operate a Two–Way Radio Can Be a Special Skill

U.S.S.G. § 3B1.3 does not define the term "special skills." The application notes explain that " '[s]pecial skill' refers to a skill not possessed by members of the general public and usually requiring substantial education, training or licensing. Examples would include pilots, lawyers, doctors, accountants, chemists, and demolition experts." U.S.S.G. § 3B1.3, comment. (n. 2). The background note adds that the guideline applies to those "who abuse ... their special skills" and that "such persons generally are viewed as more culpable." U.S.S.G. § 3B1.3, comment. (backg'd.).

This circuit has not yet addressed a challenge of the sort presented by this appeal to a district court's application of the special skills enhancement. *Cf. United States v. Fuente–Kolbenschlag,* 878 F.2d 1377, 1380 (11th Cir.1989) (rejecting defendant's contention that to enhance for use of special skill of printing was improper double counting when offense of conviction was counterfeiting). A number of other circuits, however, have considered the meaning of "special skills." *See, e.g., United States v. White,* 972 F.2d 590 (5th Cir.1992) (finding skills of defense lawyer with specialty in drug cases to be special skills in crime of cocaine possession), *cert. denied,* —— U.S. ——, 113 S.Ct. 1651, 123 L.Ed.2d 272 (1993); *United States v. Aubin,* 961 F.2d 980 (1st Cir.1992) (finding skills in servicing and repairing automatic teller machines were special skills in robbery of such a machine); *Connell,* 960 F.2d 191 (holding that registered stockbroker used special skills to structure transactions to evade federal cash transaction reporting statutes); *Hubbard,* 307 F.2d at 310 (finding that knowledge of engineering and explosives were special skills in bombing); *United States v. Hummer,* 916 F.2d 186 (4th Cir. 1990) (finding inventing skills and unique ability to tamper with consumer products to be special skills used to enhance credibility of extortionary threats to tamper with manufacturer's products), *cert. denied,* —— U.S. ——,

111 S.Ct. 1608, 113 L.Ed.2d 670 (1991); *United States v. Talbott,* 902 F.2d 1129 (4th Cir.1990) (finding bomb manufacturing skills were special skills in possession of unlawfully made destructive devices). None adopts a reading of the term which would prevent a court from enhancing a sentence on the basis that the defendant used special skills of radio operation to facilitate the commission or concealment of the crime of cocaine importation.

Two cases decided by other circuits, discussing whether photography skills are special skills, provide a helpful comparison. The Fifth and Ninth Circuits found that photography skills were not special skills in the absence of evidence that the defendant possessed a greater expertise in photography than the general public. *United States v. Green,* 962 F.2d 938, 944–45 (9th Cir.1992); *United States v. Foster,* 876 F.2d 377, 378 (5th Cir.1989).[2] The *Foster* court did not conclude that photography could never be a special skill, but instead found no evidence in that case that the defendant had any special abilities in photography. *Foster,* 876 F.2d at 378. Similarly, the Ninth Circuit, in *Green,* found that the defendant was not a professional photographer and that the record did not indicate that he had any greater photography skills than the general public; therefore, the court held that the defendant's photography skills were not special skills. *Green,* 962 F.2d at 945.

■ The issue in this case is analogous to that presented in *Foster* and *Green.* Although not every instance of radio operation requires skills not possessed by members of the general public, it is possible to develop expertise in that field that rises to the level of a special skill. Whether the individual's knowledge of radio frequencies, ability to set up the necessary equipment and ability to operate the radio constitute special skills is a question of fact which must be determined from the evidence in the case.[3]

### B. Monte's Radio Operating Skills

■ Monte contends that even if radio operating skills could be special skills under certain circumstances, he did not use special skills to perform his duties as radio operator in this offense. The district court found that Monte had special skills in operating radios, which he used in setting up the equipment and using the proper frequencies to reach Colombia.

The evidence on this issue included what Monte told an undercover agent about his qualifications. He said he had called Colombia so many times that he had become very familiar with the business, and he told the agent that he often drove to the beach where he used a radio to call Colombia. Other testimony described what Monte actually did in the course of the defendants' stay in Haiti. At sentencing, the district court contrasted merely talking on the radio with what Monte actually did in his role as the radio expert. (R. 8 at 16). Monte set up the radio involved in the offense with the help of two others. He produced a piece of paper with possible frequencies written on it. He complained about the lack of certain amplifiers and other equipment and said that he would bring these items the next time. He successfully operated the radio to speak with persons in Colombia on several occasions while the defendants made arrangements to receive the cocaine from Colombia.

Based on the evidence as a whole, the district court's finding is not clearly erroneous. Where the evidence has two possible interpretations, the district court's "choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

### V. CONCLUSION

It was not error for the district court to enhance Monte's sentence under § 3B1.3.

---

**2.** The Fifth Circuit found that in view of the evidence presented that "work with a printing press required a high level of skill," the district court's finding that such skills were special skills was correct. *Foster,* 876 F.2d at 378. The *Foster* court, however, remanded for re-sentencing on the ground that the crime to which the defendant pleaded guilty was photographing federal reserve notes with the intent to counterfeit, in violation of 18 U.S.C. § 474, and that crime did not involve printing, but merely photographing.

**3.** Monte suggests that one would have to have expertise in the repair of radios to have a special skill in this field. We reject this narrow reading of the special skills enhancement.

The defendants have not demonstrated reversible error in any of the challenges raised on appeal. We, therefore, affirm their convictions and sentences.

AFFIRMED.