FILED

SEP 09 2011

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

CARLOS CORONA,

          Petitioner - Appellant,

    v.

V. M. ALMAGER, Warden; BILL
LOCKYER, Attorney General,

          Respondents - Appellees.

No. 09-56717

D.C. No. 3:07-cv-02117-BTM-
NLS

MEMORANDUM[*]

Appeal from the United States District Court
for the Southern District of California
Barry T. Moskowitz, District Judge, Presiding

Argued and Submitted June 7, 2011
Pasadena, California

Before: B. FLETCHER and N.R. SMITH, Circuit Judges, and GWIN, District
Judge.[**]

    Petitioner-Appellant Carlos Corona appeals the denial of his petition for writ

of habeas corpus.  He contends that the state trial court erroneously denied his

---

    [*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

    [**]    The Honorable James S. Gwin, District Judge for the U.S. District
Court for Northern Ohio, sitting by designation.

motion under *Batson v. Kentucky*, 476 U.S. 79 (1986); that the prosecutor suppressed material impeachment evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150, 154 (1972); and that the trial court violated due process by denying his mid-trial request for a continuance. We have jurisdiction under 28 U.S.C. § 2253. We affirm.

The prosecutor charged Corona with the attempted murder of Kenneth Guyton, with special allegations concerning the use of a firearm for the benefit of a street gang. During jury selection the trial court denied Corona's *Batson* motion after the prosecutor used peremptory challenges to strike jurors 28 and 29, the only two African-Americans in the jury venire. At trial, Guyton testified that on the night of August 13, 2003, he rode with Corona and Jose Yanez in Yanez's two-door black Bronco. Guyton testified that after Corona ordered him out of the Bronco, Corona shot him five times because of an outstanding drug debt Guyton owed Jose Yanez's sister, Monica Yanez. After the State rested its case, the trial court denied Corona's motion for a continuance and motion for a new trial based on Corona's claim that the prosecutor suppressed the address of an impeachment witness. The jury convicted Corona and the trial court sentenced him to 42 years-to-life in state prison.

We review de novo the district court's denial of a petition for writ of habeas corpus. *Lopez v. Thompson*, 202 F.3d 1110, 1116 (9th Cir. 2000) (en banc). Because Corona's federal habeas petition was filed after the effective date of AEDPA, relief can be granted only for claims that comply with 28 U.S.C. § 2254(d): if the "state court's decision 'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court; or that it 'involved an unreasonable application of' such law; or that it 'was based on an unreasonable determination of the facts' in light of the record before the state court." *Harrington v. Richter*, --- U.S. ----, ----, 131 S. Ct. 770, 785 (2011) (quoting 28 U.S.C. § 2254(d)) (citations omitted). We review the California Court of Appeal's decision in Corona's direct appeal as the state court's last reasoned decision. *Williams v. Cavazos*, --- F.3d ----, No. 07-56127, 2011 WL 1945744, at *6 (9th Cir. May 23, 2011) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 806 (1991)).

First, Corona argues that the prosecutor acted with a racially-discriminatory purpose when he exercised a peremptory challenge against juror 28.[1] The prosecutor stated that the primary reason he struck juror 28 was because the juror had a strong accent and the prosecutor inferred a lack of English proficiency. Difficulty with English-speaking ability can be a race-neutral reason to exercise a

---

[1] On appeal, Corona does not address the peremptory challenge to juror 29.

3

peremptory strike. *See United States v. Changco*, 1 F.3d 837, 840 (9th Cir. 1993). The burden therefore moved to Corona to persuade the state court that the prosecution's explanation was pretextual. *Batson*, 476 U.S. at 98. Corona points out that the trial court was the first to advance juror 28's accent as a reason to exercise a peremptory strike. Corona further argues that the prosecutor failed to ask follow-up questions regarding juror 28's English proficiency. Although these circumstances allow an inference of pretext, the record shows that the state trial court and the prosecutor both had considerable difficulty understanding juror 28's accent. The record, therefore, does not compel the conclusion that the trial court and state court of appeal "had no permissible alternative but to reject the prosecutor's race-neutral justifications." *Rice v. Collins*, 546 U.S. 333, 341 (2006). Nor does the record show that the trial court or the state court of appeal "acted contrary to clearly established [Supreme Court] law in recognizing and applying *Batson*'s burden-[shifting] framework." *Rice*, 546 U.S. at 342.

Next, Corona advances a *Brady/Giglio* claim. A witness who lived close to the location of the shooting told police investigators that immediately after hearing gunshots, she saw a white "Cholo-type" car with four doors pick up a running man and drive away. The prosecutor provided Corona with the witness's police statement and address. Corona hired an investigator months before trial but the

4

investigator was unable to contact the witness. The week before the trial, the prosecutor discovered that the witness had moved to Arizona and learned her new address and phone number. A week later, after jury selection, Corona's investigator finally discovered that the witness had moved and the prosecutor disclosed to Corona her new address and phone number. After Corona learned that would take one month to complete the out-of-state subpoena process, he moved for a continuance. The trial court denied Corona's motion.

In order to establish a *Brady*/*Giglio* violation, a defendant must show that the prosecutor, either willfully or inadvertently, suppressed material evidence favorable to the defense and the suppression was prejudicial. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999) . Evidence is material and prejudicial "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome" of trial. *United States v. Bagley*, 473 U.S. 667, 682 (1985).

The witness's testimony about observing a four-door white car *after* the shooting does not directly contradict Guyton's testimony that he and Corona were traveling in a two-door black Bronco *before* the shooting. Nor does it undermine Guyton's repeated identifications of Corona as the shooter. And even if the

5

prosecution disclosed the witness's Arizona address on the eve of the trial instead of a week later, Corona has not shown a reasonable probability that he would have secured the testimony in time for trial—the out-of-state subpoena required a month to process—or that the mid-trial motion to continue would have succeeded. The state court of appeal's conclusion that Corona failed to show that the testimony was material or that its suppression was prejudicial is not an unreasonable application of clearly established law. *See Bagley*, 473 U.S. at 682.

Finally, Corona claims that the state court violated his due process rights when it declined to grant him a continuance. *See Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). The defense investigator did nothing more than repeatedly visit the witness's prior residence for five months and perform one inadequate database search a month before trial. On this record, the state court of appeal reasonably concluded that the defense investigator should have been more diligent in searching for the witness and that a one-month delay was unreasonable in light of the lack of diligence by Corona.

AFFIRMED.