**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Justin Tanner PETERSEN,**
**Defendant–Appellant.**

Nos. 96–50037, 96–50040, 96–50038 and 96–50039.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 4, 1996.

Decided Oct. 22, 1996.

Jay L. Lichtman, Los Angeles, CA, for defendant-appellant.

David J. Schindler, George S. Cardona, Assistant United States Attorneys, Los Angeles, CA, for plaintiff-appellee.

Before: FLETCHER, BEEZER, and
KLEINFELD, Circuit Judges.

FLETCHER, Circuit Judge:

Defendant Justin Tanner Petersen appeals from the sentence imposed after his plea of guilty to charges of computer fraud, possession of a stolen vehicle transported across state lines, conspiracy to commit computer fraud and wire fraud, and interception of wire and electronic communications in four separate cases consolidated for sentencing. Petersen challenges the district court's (1) two-level upward adjustment for use of a special skill based upon his computer skills; (2) two-level upward adjustment for obstruction of justice; (3) failure to reduce the offense level on the grounds that one of the frauds was merely an attempt; and (4) ordering of restitution in the amount of $40,000. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

I

On July 20, 1992, Petersen pled guilty in three criminal cases. In CR 91–00995–SVW, he pled guilty to count one of an eight count indictment for computer fraud in violation of 18 U.S.C. § 1030(a)(2). The indictment charged that between February 11, 1991 and April 21, 1991, he gained unauthorized access to computers of TRW Information Services, a consumer credit reporting agency. The evidence at sentencing showed that Petersen, then in Texas, engaged in credit card fraud by selecting names from the telephone book and "hacking"[1] into credit reporting services to obtain information which he used to order fraudulent credit cards. He then made charges on the fraudulent credit cards.

In CR–91–00956–SVW, Petersen pled guilty to count one of a single count indictment for possession of a stolen vehicle which crossed state lines in violation of 18 U.S.C. § 2313. The evidence at sentencing showed that on or about January 12, 1991, Petersen, then in California, responded to an advertisement in a local newspaper offering a 1986 Porsche for sale. Petersen took the car for a test drive and drove off with the car. He transferred license plates from a car registered to him to the stolen Porsche and moved to Texas.

In CR 92–00575–SVW, Petersen pled guilty to all counts of a four-count information. Count one charged Petersen with conspiracy to gain unauthorized access to a federal interest computer system to carry out a scheme to defraud and to intercept wire and electronic communications in violation of 18 U.S.C. §§ 371, 1030(a)(4) and 2511. Count two charged Petersen with interception of wire, oral and electronic communications in violation of 18 U.S.C. § 2511. Counts three and four charged Petersen with unauthorized access to a federal interest computer system in violation of 18 U.S.C. § 1030(a)(4). With respect to the last count, the evidence at sentencing showed that on September 28, 1989, Petersen gained unauthorized access to the computers of Pacific Bell to facilitate intercepting and seizing the telephone lines of radio station KPWR FM. Petersen's confederates Kevin Lee Poulsen and Ronald Mark Austin had discovered a computer program which could be manipulated to "rig" radio station promotional contests by seizing control of the telephone lines leading to the radio station to ensure that they were the correct caller to win various prizes. They advised Petersen of this scheme, and Petersen used the information to call the radio station and "win" a $10,000 cash prize. Poulsen and Austin "won" at least two Porsche automobiles, a $20,000 cash prize, a $10,000 cash prize, and two trips to Hawaii.

Petersen was arrested in Dallas, Texas in or about June 1991 and agreed to be debriefed regarding his criminal activities. He entered into a plea agreement requiring his cooperation and assistance to law enforcement and was transported to the Central District of California. There he was released

1. Essentially, hacking is the ability to bypass computer security protocols and gain access to computer systems.

on bail in order to assist the FBI. After Petersen pled guilty to the above charges, sentencing was continued by stipulation several times in order to permit Petersen's cooperation.

Petersen engaged in extensive assistance for the government while on bail. The FBI rented him an apartment with computers, phone lines, and pagers. Among other things, Petersen helped seize Poulsen's computer, resulting in evidence used to convict Poulsen, and helped gather evidence against Austin, who was ultimately prosecuted and convicted.

In October 1993, the FBI received information suggesting that Petersen had engaged in additional criminal activity while on bail. The United States met with Petersen and his counsel to confront them with the allegations. Petersen admitted committing additional acts of credit card fraud while on bail. During a recess, Petersen fled. A bench warrant was issued for his arrest.

On January 24, 1994, counsel appeared before the district court. Petersen remained a fugitive. The court took the sentencing date off calendar pending Petersen's capture or self-surrender.

While a fugitive, Petersen hacked into the computers of Heller Financial and obtained the codes necessary to effectuate a wire transfer from Heller to another bank account. On August 17, 1994, Petersen called in two bomb threats to Heller as a distraction. While the building was evacuated, he executed a $150,000 wire transfer from Heller through Mellon Bank into an account at Union Bank. The next day Heller discovered the transfer and managed to seize the $150,000 before it was removed from Union Bank.

On August 29, 1994, Petersen was captured. On March 27, 1995 he pled guilty to both counts of a two count information based on the crimes he committed while on bail. CR 95–00214–SVW. Count one charged con-

spiracy to commit computer fraud and wire fraud in violation of 18 U.S.C. §§ 371, 1030(a)(4) and 1343. Count two charged Petersen with knowingly possessing fifteen or more unauthorized access devices (i.e., computer passwords) that were stolen and obtained with the intent to defraud in violation of 18 U.S.C. § 1029(a).

The four cases were consolidated for sentencing. On November 27, 1995, the district court sentenced Petersen to a total period of incarceration of 41 months, a three year term of supervised release, and restitution in the amount of approximately $40,000.[2] The sentence was based on an adjusted offense level of 18 and a criminal history category of III resulting in a guidelines range of 33–41 months. The adjusted offense level was calculated as follows: Base offense level under U.S.S.G. § 2F1.1[3] (Fraud and Deceit; Forgery; Offenses Involving Altered or Counterfeit Instruments) [6 points]; loss of more than $200,000 under § 2F1.1(b)(1) [8 points]; more than minimal planning under § 2F1.1(b)(2) [2 points]; use of a special skill under § 3B1.3 [2 points]; obstruction of justice under § 3C1.1 [2 points]; committing offense while on bail under § 2J1.7 [3 points]; acceptance of responsibility under § 3E1.1(a) [minus 3 points]; and substantial assistance downward departure under § 5K1.1 [minus 2 points].

## II

■■■ The district court's factual findings at sentencing are reviewed for clear error. *United States v. Fuentes–Mendoza,* 56 F.3d 1113, 1116 (9th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 326, 133 L.Ed.2d 227 (1995); 18 U.S.C. § 3742(e).

The district court's application of the Sentencing Guidelines to the facts is reviewed for an abuse of discretion. The district court's interpretation of the Guidelines, as a question of law, ... is not entitled to

---

**2.** The court imposed 35 months on each of the convictions under CR 95–00214, CR 92–00575, and 91–00956, and 12 months on CR 91–00995, all of which were to be served concurrently. The court also imposed a 6–month period of incarceration pursuant to 18 U.S.C. § 3147 in light of the crimes committed while Petersen was on bail, to

be served consecutive to the sentences on the other counts.

**3.** Petersen was sentenced under the 1994 Sentencing Guidelines.

deference, though "[l]ittle turns on whether we label review of this particular question abuse of discretion or *de novo*, for ... [a] district court by definition abuses its discretion when it makes an error of law." *United States v. Willett*, 90 F.3d 404, 406 (9th Cir.1996) (internal citation omitted) (alteration in original) (quoting *Koon v. United States*, —— U.S. ——, ——, 116 S.Ct. 2035, 2047, 135 L.Ed.2d 392 (1996) (holding that a district court's departure from the Guidelines is reviewed for an abuse of discretion)); *see also* 18 U.S.C. § 3742(e) ("court of appeals shall give ... due deference to the district court's application of the guidelines to the facts").

## III

### A. *Special Skill Adjustment*

■ The district court imposed a two-level upward adjustment under U.S.S.G. § 3B1.3 for "use[ ] [of] a special skill." Although Petersen has not had formal training in computers, the district court reasoned that he "obviously has an extraordinary knowledge of how computers work and how information is stored, how information is retrieved, and how the security of those systems can be preserved or invaded" and that "even if he can't create programs, he could certainly work in the security end of the computer business." On the basis of these findings, the district court determined that Petersen's computer abilities constituted a special skill within the meaning of § 3B1.3.[4]

Section 3B1.3 provides that the district court may enhance the defendant's offense level if he "abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. The phrase "special skill" is defined as "a skill not possessed by members of the general public and usually requiring substantial education, training or licensing. Examples would include pilots, lawyers, doctors, accountants, chemists, and demolition experts." *Id.* comment. (applic. note 2). The "adjustment applies to persons who abuse their positions of trust or their special skills to facilitate significantly the commission or concealment of a crime. Such persons generally are viewed as more culpable." *Id.* comment. (backgr'd).

■ We have construed § 3B1.3 as requiring that the defendant employ a "pre-existing, legitimate skill not possessed by the general public" in the commission or concealment of the crime. *United States v. Green*, 962 F.2d 938, 944 (9th Cir.1992) (quoting *United States v. Young*, 932 F.2d 1510, 1513 (D.C.Cir.1991)). "[T]he Guideline's use of the word 'facilitated' implies that an enhancement for use of a special skill under section 3B1.3 should apply if the special skill made it significantly easier for the defendant to commit or conceal the crime." *Mainard*, 5 F.3d at 405. We have rejected application of § 3B1.3 "merely because the offense was difficult to commit or required a special skill to complete." *Green*, 962 F.2d at 944.

■■ We conclude that the district court did not err in determining that Petersen's computer abilities support a special skill enhancement. As the district court found, Petersen is skilled at accessing and manipulating computer systems. These skills are of a high

**4.** This court appears not to have directly addressed what standard of review we apply to a district court's determination that a defendant used a special skill within the scope of § 3B1.3, instead reciting that we review factual determinations for clear error and legal interpretations de novo. *See, e.g., United States v. Mainard*, 5 F.3d 404, 405 (9th Cir.1993). The Supreme Court's decision in *Koon*, although directly addressing only departures from the Guidelines (as opposed to adjustments or enhancements to the base offense level under the Guidelines), is nevertheless instructive. Because a district court's determination that a defendant's particular abilities constitute a "special skill" is essentially a matter of "application of the guidelines to the facts," due deference is warranted. *See Koon*, —— U.S. at ——, 116 S.Ct. at 2046 (quoting 18 U.S.C. § 3742(e)). The answer is apt to vary depending on, for instance, factual matters such as the extent of education or training received and the level of skill enjoyed. This suggests that an abuse of discretion standard should guide our review. *See id.* To be sure, questions of law may arise in deciding whether a defendant used a special skill under § 3B1.3, to which we need not defer to the district court's resolution. *See id.* at ——, 116 S.Ct. at 2047. Regardless of how we characterize the standard of review, however, we conclude that the district court did not err in adjusting Petersen's offense level for use of a special skill.

level and not possessed by members of the general public. Although the Guidelines provide that special skills "usually" require substantial education, training or licensing, U.S.S.G. § 3B1.3 comment. (applic. note 2), such education, training or licensing is not an absolute prerequisite for a special skill adjustment. *See United States v. Lavin*, 27 F.3d 40, 41 (2d Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 453, 130 L.Ed.2d 362 (1994). Despite Petersen's lack of formal training or licensing, his sophisticated computer skills reasonably can be equated to the skills possessed by pilots, lawyers, chemists, and demolition experts for purposes of § 3B1.3. *See United States v. Mendoza*, 78 F.3d 460, 465 (9th Cir.1996) (defendant's ability to drive an 18–wheeler without any reported mishap over several years warrants a special skill adjustment under § 3B1.3); *United States v. Malgoza*, 2 F.3d 1107, 1111 (11th Cir.1993) (defendant's advanced level of radio operating ability constitutes a special skill); *cf. United States v. Harper*, 33 F.3d 1143, 1151 (9th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 917, 130 L.Ed.2d 798 (1995) (defendant's knowledge of ATM systems gained through her employment with an ATM service company and bank does not warrant a special skill adjustment).[5]

Petersen clearly "used" his computer skills in the commission of the crimes to which he pled guilty. By enabling him to break into sophisticated computer systems, place wire taps on phones, and transfer large sums of money between banks, Petersen's computer skills "facilitated" his ability to commit the series of crimes. *See Mainard*, 5 F.3d at 405 (quoting § 3B1.3). And, at least by the time he committed computer and wire fraud while on bail, Petersen's computer skills "pre-exist[ed]" the commission of the crimes. *See Green*, 962 F.2d at 944.

It is a closer question whether Petersen's computer abilities constitute "legitimate" skills within the meaning of § 3B1.3. *See*

*id.*, 962 F.2d at 944. While the district court properly concluded that Petersen's computer hacking skills *could* be transferred to legitimate use in the future, such as work in the security end of the computer industry, that does not necessarily mean that Petersen possessed a preexisting legitimate skill. The Background Note's explanation that people who abuse their special skills are subject to an upward adjustment because they are generally viewed as more culpable suggests an intent to apply the adjustment to someone such as an experienced, successful computer programmer who turns to crime rather than, say, a thief who might be able to transfer his knowledge of alarm systems to legitimate work as a security expert in the future. *Cf. Young*, 932 F.2d at 1514 ("Nothing in the commentary suggests that § 3B1.3 applies to a criminal who ... bones up on the tricks of his trade and becomes adept at committing a crime that the general public does not know how to commit."). Petersen's self-taught computer knowledge was not the result of "special societal investment and encouragement [that] allows a person to acquire skills that are then held in a kind of trust for all of us." *Mainard*, 5 F.3d at 406. But a special skill also may be acquired without social investment, a skill that enables one to victimize others more effectively than one who does not possess the skill, so a greater deterrent may be needed to discourage its use for abuse. Also, Petersen apparently did use his computer skills in working for a private investigation agency in the 1980s and defense counsel acknowledged that his client had counseled companies while on bail on how "to make their computer system safe from other hackers." Petersen urged the court, and the court agreed, not to forbid Petersen from using computers in the context of his future employment. This suggests that Petersen could have used his computer skills for legal, socially beneficial activity. *See Young*, 932

---

5. We do not intend to suggest that the ability to use or access computers would support a "special skill" adjustment under all circumstances. Computer skills cover a wide spectrum of ability. Only where a defendant's computer skills are particularly sophisticated do they correspond to the Sentencing Commission's examples of "special skills"—lawyer, doctor, pilot, etc. *Cf. Green*,

962 F.2d at 945 (defendant's photography skills did not constitute special skills, as defendant was not a professional photographer and record did not indicate that he had any greater photography skills than the general public). Courts should be particularly cautious in imposing special skills adjustments where substantial education, training or licensing is not involved.

F.2d at 1514. Instead, he abused his knowledge of technology and his ability to access and manipulate computer systems, enabling him to commit serious crimes.

Petersen is skilled at accessing and manipulating computer systems; this skill is not shared by members of the general public; the skill facilitated his carrying out a series of crimes; it preexisted his carrying out the crimes; and it is translatable (and had been translated) to legitimate use. Accordingly, the district court did not err in adjusting Petersen's offense level under § 3B1.3 for use of a special skill.

### B. Obstruction of Justice

■ The district court imposed a two-level upward adjustment for obstruction of justice under U.S.S.G. § 3C1.1. The court found that Petersen absconded while on bail, knew that he was supposed to return for sentencing, wilfully failed to return, and thereby delayed sentencing. On the basis of these findings, the court determined that Petersen obstructed justice.[6]

Section 3C1.1 provides for a two level increase in the applicable offense level "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." U.S.S.G. § 3C1.1. One example of the type of conduct to which the enhancement applies is "escaping or attempting to escape from custody before trial or sentencing; or willfully failing to appear, as ordered, for a judicial proceeding." *Id.* comment. (applic. note 3(e)). One example of the type of conduct that does not warrant application of the enhancement is "avoiding or fleeing from arrest." *Id.* comment. (applic. note 4(d)).

At a hearing held October 18, 1993, the district court continued Petersen's sentencing until January 24, 1994. When queried by the district court, Petersen's counsel stated that his client agreed to (and therefore knew about) the continuance. Yet Petersen failed to attend the January 24, 1994 sentencing hearing. Counsel for the United States represented that Petersen had been in contact with him and knew he had to appear. Under these circumstances, the district court properly concluded that Petersen "willfully failing to appear, as ordered, for a judicial proceeding" within the meaning of § 3C1.1.

Petersen's absconding while on bail after conviction and before sentencing also supports the obstruction of justice enhancement. While mere flight during the investigation of a crime does not warrant enhancement, *United States v. Stites*, 56 F.3d 1020, 1026 (9th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 967, 133 L.Ed.2d 888 (1996), this court has upheld enhancement where the defendant had already been arrested for the offense, was told he was a suspect in a criminal case, and "knew he was expected to surrender himself voluntarily." *Mondello,* 927 F.2d at 1467. Petersen had not only been arrested but had also been convicted at the time he fled. *See United States v. Shinder,* 8 F.3d 633, 635 (8th Cir.1993) (holding that defendant's flight while on bond after her conviction and prior to sentencing was sufficient ground to find that she had obstructed justice). Throughout the ten months that Petersen was a fugitive, he was in contact with law enforcement officers who informed him that a warrant was outstanding for his arrest.

The district court properly concluded that Petersen's absconding between conviction and sentencing and failing to appear for a scheduled sentencing hearing warranted a two-level upward adjustment for obstruction of justice.

### C. Attempt/Conspiracy Reduction

■ Petersen challenges the district court's refusal to reduce his offense level

---

6. We have held that the district court's determination that a defendant obstructed justice under § 3C1.1 generally is a factual finding reviewed for clear error. *United States v. Mondello,* 927 F.2d 1463, 1465 (9th Cir.1991). The inquiry involves the district court's application of the guideline to the facts, to which "due deference"

is given. *See Koon,* —— U.S. at ——, 116 S.Ct. at 2044, 18 U.S.C. § 3742(e). Regardless of whether we characterize our review as for clear error, for an abuse of discretion, or as otherwise involving deference to the district court, we conclude that the district court did not err.

pursuant to U.S.S.G. § 2X1.1. In case No. CR 95–00214, Petersen pled guilty to conspiracy to commit computer and wire fraud in relation to a scheme to wire transfer money from Heller Financial to another financial institution. He contends that the execution of the scheme to defraud Heller Financial amounted solely to an attempt or conspiracy, thereby entitling him to a three-point reduction in his offense level under § 2X1.1. The district court concluded that "this is a case where the offense was substantially completed." The court found that "everything had been done" and Petersen's receipt of the money transferred from Heller "had been impeded by a third party." Accordingly, the court declined to reduce the offense level.

Section 2X1.1(b) provides, in relevant part, as follows:

> If an attempt [or conspiracy], decrease by 3 levels, unless the defendant completed all the acts the defendant believed necessary for successful completion of the substantive offense or the circumstances demonstrate that the defendant [or the conspirators] was about to complete all such acts but for the apprehension or interruption by some similar event beyond the defendant's [or the conspirators'] control.

The Background Note to § 2X1.1 states:

> In most prosecutions for conspiracies or attempts, the substantive offense was substantially completed or was interrupted or prevented on the verge of completion by the intercession of law enforcement authorities or the victim. In such cases, no reduction of the offense level is warranted. Sometimes, however, the arrest occurs well before the defendant or any co-conspirator has completed the acts necessary for the substantive offense. Under such circumstances, a reduction of 3 levels is provided under § 2X1.1(b)(1) or (2).

Petersen wiretapped a Telenet telephone line and acquired the necessary passwords to execute a wire transfer. He then executed a $150,000 wire transfer from Heller Financial to Union Bank. The scheme was detected by Heller Financial the next day; Heller noti-

fied Union Bank and managed to seize the $150,000 before it could be withdrawn by Petersen or his coconspirators.

Because Petersen had already executed the fraudulent wire transfer, we agree with the district court that "the substantive offense was substantially completed." U.S.S.G. § 2X1.1 comment. (backgr'd). To the extent steps remained to be done, the fraud was "interrupted or prevented on the verge of completion by the intercession of ... the victim," Heller Financial. *Id.* Accordingly, the district court properly declined to reduce the offense level. *Cf. United States v. Yellowe*, 24 F.3d 1110, 1113 (9th Cir.1994) (Defendant was not entitled to a reduction under § 2X1.1 where he "had the unauthorized access devices and was about to use them to make charges and get money.... Only two things stopped him: being arrested, and the fact that the terminals were not connected to a bank.").

D. *Restitution*

As part of Petersen's sentence, the district court imposed restitution under the Victim and Witness Protection Act, 18 U.S.C. § 3663, in the amount of $40,000 to certain aggrieved entities and persons.[7] At the time of sentencing, Petersen had no assets or income and had unsecured debt in the amount of $19,100. The district court found, however, that Petersen had strong computer skills, was "articulate ... gutsy, smart, resourceful, creative," and "probably could be a pretty successful, productive person" in the future. Petersen is young and has demonstrated an ability to earn money in the past as a concert promoter, sound engineer, and working for a private investigation company. At Petersen's urging, the district court permitted Petersen to obtain future employment relating to the use of computers, provided he obtained permission from his probation officer. Petersen indicated that he believed he could seek employment as a computer security consultant. The district court may order an indigent defendant to pay restitution provided there is sufficient evidence in the rec-

---

7. We review district court restitution orders for an abuse of discretion and the factual findings supporting such orders for clear error. *United States v. Sarno*, 73 F.3d 1470, 1503 (9th Cir. 1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 2554, 135 L.Ed.2d 1072 (1996).

ord demonstrating that he will have a future ability to make restitution. *Sarno,* 73 F.3d at 1503; *United States v. Ramilo,* 986 F.2d 333, 336 n. 5 (9th Cir.1993). Although Petersen could conceivably have some difficulties in obtaining employment due to his felony convictions, there is certainly a reasonable possibility that he will be able to pay restitution in the amount of $40,000. *Cf. Ramilo,* 986 F.2d at 337 (vacating imposition of restitution in the amount of $454,841.97, due three years after defendant's completion of prison sentence, because there was no realistic possibility defendant could pay such a sum). Because there is "some evidence the defendant may be able to pay the amount fixed when required to do so," *id.* at 335, the district court did not abuse its discretion in imposing restitution.

Petersen contends, however, that as part of his plea agreements, he was required to assign his future earnings to the government, undermining his ability to pay restitution. We see nothing in the plea agreement suggesting that Petersen has agreed to turn over his future income to the government. To the contrary, the plea agreement states that "[b]y signing this agreement, you [Petersen] agree to pay restitution for the full loss caused by your activities, in an amount to be determined by the court at the time of sentencing."

Finally, Petersen contends that he should not have to pay $10,000 to the KPWR–FM radio station as part of the restitution order. He contends that because the radio station would have paid some other caller $10,000 as a prize had he not rigged the system, the station suffered no loss. Because the alternative winner is unknown, there is no one to whom to pay restitution. The United States incorrectly responds that Petersen failed to raise this issue below. Petersen raised the issue in his sentencing memorandum to the district court. Nevertheless, the argument is without merit. A defendant is not excused from returning a fraudulently obtained "prize" from a radio station because someone else would have received the prize. The radio station still suffered a loss by paying out $10,000 under false pretenses. "[C]riminal restitution is a means

of achieving penal objectives such as deterrence, rehabilitation, or retribution," as well as compensation. *United States v. Smith,* 944 F.2d 618, 624 n. 2 (9th Cir.1991) (internal quotation omitted), *cert. denied,* 503 U.S. 951, 112 S.Ct. 1515, 117 L.Ed.2d 651 (1992).

## IV

We conclude that the district court did not err in imposing upward adjustments for use of a special skill under § 3B1.3 and obstruction of justice under § 3C1.1, in declining to reduce the offense level under § 2X1.1 for attempt/conspiracy, or in ordering restitution.

AFFIRMED.