124 F.3d 215
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
David M. YAMADA, Defendant-Appellant.
 No. 97-10058.
 United States Court of Appeals, Ninth Circuit.
 Submitted Sept. 8, 1997.**
Filed Sept. 15, 1997.
 
 Appeal from the United States District Court for the District of Hawaii, D.C. No. CR-96-00558-1-HG; Helen Gillmor, District Judge, Presiding.
 Before HALL, BRUNETTI, and THOMAS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 David M. Yamada appeals from his conviction and 15-month sentence following his guilty plea to bank fraud (18 U.S.C. § 1344). Yamada contends that the district court erred by: (1) applying a two-level adjustment under U.S.S.G. § 3B1.2 for abuse of a position of trust and (2) awarding restitution to Yamada's employer under 18 U.S.C. § 3663. We have jurisdiction under 28 U.S.C. § 1291, and affirm.
 
 
 3
 * Abuse of Position of Trust
 
 
 4
 Yamada first contends that the district court erred by adjusting his sentence under U.S.S.G. § 3B1.3 for abuse of a position of trust because Glenn Minami, Yamada's employer and the owner of Blue Hawaii Surf ("BHS"), could have easily discovered Yamada's check kiting scheme. This contention lacks merit.
 
 
 5
 The district court's factual findings at sentencing are reviewed for clear error. See United States v. Petersen, 98 F.3d 502, 505 (9th Cir.1996). Section 3B1.3 provides a two-level upward adjustment in offense level "[i]f the defendant abused a position of public or private trust ... in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3 (1995). A position of trust is distinguished by "the extent to which the position provides the freedom to commit a difficult-to-detect wrong." United States v. Ajiboye, 961 F.2d 892, 895 (9th Cir.1992) (citations omitted).
 
 
 6
 Here, the district court found that Yamada's authority to write company checks, supervise the bookkeeper, and prepare the company's financial reports allowed him to commit and conceal his check kiting scheme for eight months without detection from Minami. Accordingly, the district court did not err by adjusting Yamada's offense level upward pursuant to section 3B1.3. See Petersen, 98 F.3d at 505.
 
 
 7
 Yamada also contends that his relationship with the Bank of Hawaii should determine whether he was in a position of trust because it was the true victim of his check kiting scheme. This content:.on lacks merit because, as discussed below, the district court found that BHS was also a victim of Yamada's illegal activity.
 
 II
 Restitution
 
 8
 Yamada next contends that the district court erred by awarding BHS restitution because Yamada repaid all the funds he embezzled from BHS and BHS received the benefit of all remaining proceeds of the check kiting scheme. This contention lacks merit.
 
 
 9
 We review a district court's restitution order for abuse of discretion. See United States v. English, 92 F.3d 909, 916 (9th Cir.1996). We review the legality of a restitution order de novo, while the district court's underlying factual findings are reviewed for clear error. See United States v. Rice, 38 F.3d 1536, 1540 (9th Cir.1994).
 
 
 10
 The district court may order a defendant to make restitution to any victim of his offense. See 18 U.S.C. § 3663(a)(1)(A) (1997). A victim is defined as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." 18 U.S.C. § 3663(a)(2). Restitution is authorized "only for the loss caused by the specific conduct that is the basis of the offense of conviction." Hughey v. United States, 495 U.S. 411, 413 (1990). The district court has broad discretion to determine the type and amount of evidence required to support an award of restitution. See United States v. Zink, 107 F.3d 716, 718 (9th Cir.1997).
 
 
 11
 At sentencing, Minami testified that he spent approximately $150,000 to expand the company in reliance on the false financial picture created by Yamada's illegal activity. Minami also would have avoided other expenses to save money had he known the true state of BHS's financial condition. While BHS did receive the benefit of the $189,000 obtained from the Bank of Hawaii in the check kiting scheme, the bank demanded immediate repayment from Minami which required him to obtain market rate loans and incur substantial interest liability. Furthermore, Yamada's failure to file the company's excise tax returns and pay the taxes delayed detection of his fraudulent scheme by making the company's finances continue to appear more favorable than they actually were. As a result of Yamada's legal activities, Minami owed $80,000 in interest payments and unpaid tax penalties.
 
 
 12
 From this evidence, the district court found that BHS had suffered losses of $80,000 as a direct result of Yamada's illegal activity. This finding is not clearly erroneous. See Rice, 38 F.3d at 1540. Accordingly, the district court did not abuse its discretion in ordering Yamada to pay $50,000 in restitution to BHS. See English, 92 F.3d at 916.
 
 
 13
 AFFIRMED.
 
 
 
 **
 The panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a); 9th Cir. R. 34-4
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3