HOLMES, Circuit Judge,
concurring.
I join the Panel’s opinion in full. I write separately to offer additional thoughts regarding the special-skill enhancement, U.S.S.G. § 3B1.3, and Mr. Berry’s contention that his truck-driving skills do not qualify as a special skill. These additional comments are fully in accord with the Panel’s opinion, as I read it, and are meant to *836 further clarify the application of this Guideline.
Beginning with the Guideline’s language, it states that “[i]f the defendant ... used a special skill[ ] in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels.” U.S.S.G. § 3B1.3. The commentary defines “special skill” as “a skill not possessed by members of the general public and usually requiring substantial education, training or licensing,” and provides that “[ejxamples would include pilots, lawyers, doctors, accountants, chemists, and demolition experts.” Id. § 3B1.3 cmt. n. 4 (emphasis added).
It seems patent that the commentary’s drafters intend for us to treat these few examples as categorically qualifying for the enhancement. In other words, any defendant who has acquired the high level of education, training, or licensing that is required to occupy one of these specified positions should be deemed to possess a special skill within the meaning of § 3B1.3. However, once one departs from this rarefied, categorical domain, the focus of the special-skill inquiry must center on the actual capabilities possessed by a given defendant, rather than the labels or titles that may be associated with his or her purported special skill.
This is true because a given profession or job title can encompass a broad range of abilities, some of which may qualify as a special skill and others of which may not. For example, a certain level of computer skills would qualify as a special skill, while the rudimentary ability to use a computer would most likely not. See United States v. Petersen, 98 F.3d 502, 507 n. 5 (9th Cir.1996) (“We do not intend to suggest that the ability to use or access computers would support a ‘special skill’ adjustment under all circumstances. Computer skills cover a wide spectrum of ability.”). Compare id. at 506-07 (concluding that the defendant’s “high level” computer skills qualified as a special skill), with United States v. Lee, 296 F.3d 792, 799 (9th Cir.2002) (holding that the defendant’s computer skills were not a special skill because, inter alia, they did not rise to the level of sophistication of the defendant’s special skills in Petersen, supra), and United States v. Godman, 223 F.3d 320, 322-23 (6th Cir.2000) (same). The Panel’s opinion recognizes this point (albeit tacitly) because it focuses on Mr. Berry’s particular truck-driving abilities, rather than on whether or not truck-driving skills categorically constitute a special skill.
As for how this inquiry should be conducted on a case-by-case basis, the commentary makes clear that, to qualify as a special skill, the skill must not only be one that is “not possessed by members of the general public,” but it must also “usually requir[e] substantial education, training or licensing.” U.S.S.G. § 3B1.3 cmt. n. 4. This creates a two-part test, both parts of which must be met for a given skill to qualify as a special skill. See Lee, 296 F.3d at 798 (“[T]his sentencing guideline is best read[ ] as a two-part test. The test is not just whether the skill is ‘not possessed by members of the general public,’ but also, as a sine qua non, whether it is a skill ‘usually requiring substantial education, training, or licensing.’ ” (citation omitted)); see also Godman, 223 F.3d at 322 (noting that the district court stressed “overmuch” on whether the defendant’s skills were not shared by the general public and that because the commentary refers “to the substantial training of such professionals as doctors and accountants ..., emphasis is better placed on the difficulty with which a particular skill is acquired”); United States v. Young, 932 F.2d 1510, 1512-13 (D.C.Cir.1991) (rejecting the proposition that the special skill enhance *837 ment “is due whenever an offense involves some skill that the general public does not possess”). But cf. United States v. De La Cruz Suarez, 601 F.3d 1202, 1219 (11th Cir.2010) (“If an ‘average person off the street’ does not possess the skill, then the skill is considered ‘special’ for the purposes of applying the [special skill] enhancement.” (quoting United States v. Calderon, 127 F.3d 1314, 1339 (11th Cir.1997))). A court first undertakes the relatively straightforward inquiry into whether the skill is possessed by members of the general public; if it is not, the court must proceed to ensure that the second part of the test is met.
The second part of the test requires the skill to be one that “usually requir[es] substantial education, training or licensing.” U.S.S.G. § 3B1.3 cmt. n.4. Regarding this inquiry, two points are worth underscoring. First, adopting a reading that is consistent with the evident purpose of the enhancement—to define a relatively narrow subset of the possible universe of skills possessed by defendants that would warrant greater sanction when employed to facilitate the commission or concealment of crimes—the term “substantial” should be read as modifying all three terms that come after it.[1] If this were not so, the second part of the two-part test would be rendered essentially surplusage. See FTC v. Accusearch, Inc., 570 F.3d 1187, 1198 (10th Cir.2009) (“Under a long-standing canon of statutory interpretation, one should avoid construing a statute so as to render statutory language superfluous.” (quoting McCloy v. U.S. Dep’t of Agric., 351 F.3d 447, 451 (10th Cir.2003)) (internal quotation marks omitted)); 3 Norman J. Singer, et al., Sutherland Statutory Construction § 59:8 (7th ed. 2012) (“Interpretations that render a statutory provision superfluous, or insignificant, are avoided wherever possible.”).
Notably, this is true because almost every skill not possessed by the general public requires some minimal level of training, and since the terms in the clause are stated disjunctively, if the adjective “substantial” does not extend to the noun “training,” in virtually every instance defendants would qualify for the enhancement if they had a skill not possessed by members of the general public—viz., it would follow virtually ineluctably from defendants’ possession of a skill not possessed by the general public that they would also possess at least some minimal level of training, thus satisfying the second part of the two-part test. The effect would be to render this second part essentially surplusage and make the not-possessed-by-the-general-public inquiry—the first part of the test— the sole inquiry in almost all cases. This runs contrary to the clear terms of the commentary that establish a two-part test for determining whether a defendant possesses a special skill.
It should be acknowledged that the placement of the comma after the term “education,” might suggest the establishment of a separate and distinct conceptual unit in which “substantial” modifies only “education.” See, e.g., The Chicago Manual of Style § 6.16, at 311 (16th ed. 2010) (noting that the placement of a comma *838 “usually denotes a slight pause”). However, contrary to the “widely practiced usage,” the commas in the clause at issue are not used serially, id. § 6.18, at 312; see A Manual of Style § 8.43, at 122 (1986) (noting that commas appear “[ajfter each member within a series of three or more words ... used with and, or, or nor ”); Bryan A. Garner, A Dictionary of Modem Legal Usage 714 (2d ed. 1995) (noting that a comma is used “[t]o separate items (including the last from the penultimate) in a list of more than two”), from which we might more readily infer the intent to create three separate and discrete conceptual categories. And reading the clause to define such a category for “substantial education” is certainly not the only grammatical way to read the language. See, e.g., Palmer v. Martinez, 42 So.3d 1147, 1153 (La.Ct.App.2010) (“rejecting] [a] strained interpretation regarding the use of the comma as unreasonable and absurd” that would have read the word “written” in the phrase “written contract, agreement, or permit” as only extending to the word “contract” (internal quotation marks omitted)); cf. Flores-Figueroa, 556 U.S. 646, 652, 129 S.Ct. 1886, 173 L.Ed.2d 853 (2009) (“The manner in which the courts ordinarily interpret criminal statutes is fully consistent with this ordinary English usage.”).
The context here counsels an interpretation of the modifying scope of the term “substantial” that reaches all three terms in the series because that will avoid rendering (contrary to the drafters’ clear intent) the second part of the special-skill test nigh surplusage and serve to define a subset of truly “special” skills that are worthy of an enhanced punishment. See 3 Singer, et al., supra, § 59:8 (“Although it is legitimate to consider the rules of sentence structure and grammar in interpreting statutes, the court’s ultimate task is to interpret the statute in accordance with the intent of the legislature.”); cf. Cabell v. Markham, 148 F.2d 737, 739 (2d Cir.1945) (Hand, J.) (“Of course it is true that the words used, even in their literal sense, are the primary, and ordinarily the most reliable, source of interpreting the meaning of any writing: be it a statute, a contract, or anything else. But it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning.”); cf. also United States v. Hernandez, 655 F.3d 1193, 1197 (10th Cir.2011) (“Selectively enforcing a statute’s plain terms is not something courts generally do, and something we cannot do in this case.”).
Second, the term “usually” should be read to describe how one obtains the skill at issue. “Usually” means “more often than not.” Webster’s Third New International Dictionary 2524 (1981). Thus, the commentary should be interpreted to mean that, more often than not, one will need to undergo substantial education, training, or licensing to obtain the special skill. However, it is clear from our precedent that the term “usually” leaves room for the enhancement to apply in situations where the “defendant’s special skill [was] derived from experience or from self-teaching.” United States v. Gandy, 36 F.3d 912, 914 (10th Cir.1994); see United States v. Burt, 134 F.3d 997, 999 (10th Cir.1998) (“Although formalized education, training, or licensing is usually necessary to trigger the enhancement, we have held that special skills can be derived from experiencé or from self-teaching.” (emphasis added)).
Following these legal principles, in a manner consistent with the reasoning of the Panel’s opinion, I would uphold the district court’s application of the special- *839 skill enhancement in this case. Truck drivers do not categorically possess a special skill; some truck-driving skills will satisfy both parts of the test, while others will not.[2] Here, the district court’s task was to determine whether Mr. Berry’s truck-driving skills were sufficient to be deemed special. Because this is a question of fact, we review its decision under the highly deferential clear-error standard. See United States v. Merriman, 647 F.3d 1002, 1005 (10th Cir.2011) (“Whether a defendant occupied a position of trust under Section 3B1.3 is generally a factual matter that we review only for clear error.”); see also United States v. Osborne, 593 F.3d 1149, 1153-54 (10th Cir.2010) (distinguishing between legal conclusions and factual determinations in reviewing the district court’s upward departure under the Guidelines).
The district court did not clearly err in making its § 3B1.3 determination. The first requirement is certainly met: the ability to drive a commercial truck is not a skill possessed by the general public. See United States v. Lewis, 41 F.3d 1209, 1214 (7th Cir.1994) (“Truck driving requires technical knowledge or ability that the average citizen does not possess.”); see also United States v. Mendoza, 78 F.3d 460, 465 (9th Cir.1996) (“[T]he driving of an 18-wheeler without any reported mishap over several years is a skill well beyond that possessed by the general public.”). As to the second requirement, there was minimally sufficient evidence that Mr. Berry’s truck-driving skills were of such a high level as to usually require substantial edu-
cation, training, or licensing. Mr. Berry obtained a commercial driver’s licence after one - year of truck-driving school and on-the-job training, and he had approximately five and one-half years of truck-driving experience at the time of his arrest. A district court would not clearly err in finding that this level of training and experience indicated that Mr. Berry possessed the kind of skill that usually would require substantial education, training, or licensing to acquire. In other words, it would not clearly err in finding that Mr. Berry’s skill qualified under the second part of the enhancement’s test.
To be sure, it is beyond peradventure that the level of skill possessed by Mr. Berry is a far cry from that required to occupy the positions that the Guideline’s commentary categorically qualifies for the enhancement—that is, “pilots, lawyers, doctors, accountants, chemists, and demolition experts.” U.S.S.G. § 3B1.3 cmt. n. 4. However, as the Panel’s opinion clearly acknowledges, the drafters of § 3B1.3’s commentary did not contemplate that they were providing a comprehensive or exhaustive list of occupations that would qualify for the special-skill enhancement. It also logically follows that they did not envision that district courts—-when operating outside this rarefied, categorical zone—-would be obliged to refrain from applying the enhancement unless they found defendants who possessed a matrix of education, training, and licensing that precisely correlated with the commentary’s list of occupations. Such exactitude or symmetry is not required. In short, I *840 cannot say that the district court clearly erred in concluding that Mr. Berry’s truck-driving skills qualified him for the special-skill enhancement.
Because I read the Panel’s opinion as being entirely consistent with the foregoing analysis, I fully concur in its ruling regarding the special-skill enhancement, as well as its ultimate determination to affirm the judgment of the district court.

. For example, it is unlikely that a defendant who is driving a commercial truck for the first time when apprehended committing the offense and who possesses no truck-driving training or licensing would be deemed to possess a special skill within the meaning of § 3B1.3. Such a defendant would certainly possess a skill not possessed by members of the general public—the ability to drive a commercial truck—but he or she would be unlikely to possess the skill at such a high level that it usually would need to be obtained through substantial education, training, or licensing. Accordingly, this hypothetical defendant would not satisfy the second part of the two-part test.